RAYMOND REBEOR, Respondent, and HUGH L. CAREY, as Governor of the State of New York, Intervenor-Respondent, v DAVID WILCOX, as Oswego County Clerk, et al., Appellants.

In the Matter of WILLIAM J. McCARTHY, Individually and as a Member of the Oswego County Legislature, Respondent, and HUGH L. CAREY, as Governor of the State of New York, Intervenor-Respondent, v OSWEGO COUNTY LEGISLATURE, Appellant.

Fourth Department, July 12, 1977

*Robert J. Nicholson* for appellant.

*Fred I. Sumner* for Raymond Rebeor, respondent.

*John T. Sullivan, Jr.,* for William J. McCarthy, respondent.

*Louis J. Lefkowitz, Attorney-General (William Kogan* and *Ruth Kessler Toch* of counsel), for intervenor-respondent.

*Per Curiam.* This is an appeal from a judgment which declared invalid the appointment of appellant William E. Dyer by the Oswego County Legislature to fill a vacant legislator's seat therein and the local law pursuant to which Dyer was so appointed, and which declared valid the appointment

of respondent Raymond Rebeor to the same position by the Governor.

On or about December 1, 1976 the incumbent Oswego County Legislator for the Fifth Ward of the City of Fulton resigned and vacated his office. On December 27, 1976 the Mayor of Fulton, purporting to act under section 18 of the Fulton City Charter which authorizes the Mayor to fill an "elective office of the city", appointed petitioner-respondent Raymond Rebeor to fill the vacancy. On December 30, 1976 the Oswego County Clerk refused to accept Mr. Rebeor's oath of office. On January 6, 1977 the Oswego County Legislature enacted a resolution purporting to appoint respondent-appellant William E. Dyer to the same legislative seat. Upon acceptance of his oath by the County Clerk, Dyer took his seat in the Oswego County Legislature. The County Legislature claims to have acted pursuant to the authority of Oswego County Local Law No. 2 of 1971 which gives the Oswego County Legislature the power to fill vacancies created upon the occurrence of one of the events specified in section 30 of the Public Officers Law, including the resignation of an incumbent from office (§ 30, subd 1, par b).[1] The legal basis for the enactment of this local law is asserted to be section 2 (subd [c], par [1]) of article IX of the New York State Constitution which gives local governments the power to adopt and amend local laws not inconsistent with the Constitution or any general law relating, *inter alia,* to the "mode of selection" of its "officers", and section 10 (subd 1, par [ii], subpar a, cl [1]) of the Municipal Home Rule Law which sets forth similar provisions.

On February 10, 1977 Governor Carey appointed petitioner-respondent Rebeor as County Legislator for the Fifth Ward of the City of Fulton, purportedly under authority of subdivision 7 of section 400 of the County Law and section 43 of the Public Officers Law.

Petitioner-respondent William J. McCarthy, as Legislator and minority leader of the Oswego County Legislature, thereupon commenced this article 78 proceeding to declare invalid

---

1. "§ 2. In the event of a vacancy created by the happening of one of the events defined in section thirty of the Public Officers Law of the State of New York before the expiration of the term of any member of the legislature, such vacancy shall be filled by appointment of the county legislature of a qualified person who shall hold such office until such person's successor is elected at the next general election in conformity with applicable and controlling statutory provisions."

the County Legislature's appointment of Dyer and Local Law No. 2 of 1971. Petitioner-respondent Rebeor brought this proceeding to require the Oswego County Clerk to accept his oath of office and to declare null and void the appointment of Dyer and the local law pursuant to which Dyer was appointed. The Governor intervened by the Attorney-General and filed an answer and memorandum of law. Special Term held that the Mayor of Fulton had no authority under the Fulton City Charter to appoint county officials and hence his appointment of Rebeor was invalid. The intervenor agrees with this determination, stating in his brief that "[a] county legislator is an elective *county* officer [cited cases omitted]. Thus the Mayor was clearly without power to appoint". We are in agreement with this conclusion (see *Kasperek v Wilcox,* 80 Misc 2d 1024). However, the court held valid the appointment of Rebeor by the Governor, relying on the authority of *Resnick v County of Ulster* (55 AD2d 222). Although expressing his opinion that he was not in accord with *Resnick,* the Trial Justice stated that he was constrained to follow that decision "there presently being no authority to the contrary by either the Court of Appeals or the Appellate Division, Fourth Judicial Department."

Any discussion as to the filling of vacancies in a county legislature must start with *Nydick v Suffolk County Legislature* (81 Misc 2d 786, affd 47 AD2d 241, affd on opn at Special Term 36 NY2d 951). It was held therein that a county charter provision which provided for appointment to vacancies in the County Legislature by that Legislature was not in conflict with the provisions of subdivision 7 of section 400 of the County Law or section 43 of the Public Officers Law. In *Resnick v County of Ulster* (55 AD2d 222, *supra)* the Third Department sought to distinguish *Nydick* on the grounds that its effect was limited to County Legislatures acting to fill vacancies pursuant to home rule charters. We find no such distinction.

The court in *Nydick* held that subdivision 7 of section 400 of the County Law is not a general law since it did not apply with equal effect to all counties. Therefore, it cannot by its own force nullify a properly constituted local law (NYS Const, art IX, § 2; Municipal Home Rule Law, § 10, subd 1, par [ii], subpar a, cl [1]). Moreover, *Nydick* held that section 400 of the County Law was inapplicable to the filling of a vacancy in a County Legislature because the power of the Governor to

appoint to vacancies under subdivision 7 of section 400 of the County Law applies only to those offices specifically enumerated in subdivision 1 of section 400; since the office of County Legislator is not enumerated in subdivision 1 of section 400, the Governor's power to appoint to a vacancy (in a County Legislature) does not arise under subdivision 7 (81 Misc 2d, at p 791). (See, also, *Kasperek v Wilcox,* 80 Misc 2d 1024, 1025, *supra.)*

The sole remaining statutory authority under which the Governor may appoint to fill a county legislative vacancy is section 43 of the Public Officers Law. However, section 43 of the Public Officers Law allows the Governor to appoint to county legislature vacancies only if there is "no provision of law for filling the same". In *Nydick* a county charter provision specifically provided for filling vacancies. In the instant case a local law covers the point. In a similar situation, the *Resnick* court found such a local law to be invalid, finding significance in the fact that section 3 of article XIII of the State Constitution uses the language "filling vacancies", whereas section 2 of article IX of the Constitution and section 10 (subd 1, par [ii], subpar a, cl [1]) of the Municipal Home Rule Law use the words "mode of selection * * * of * * * officers and employees" in setting forth the powers of local governments. However, the *Nydick* court found that charter counties had the power to provide for filling county legislature vacancies based upon the very constitutional provision at issue here (art IX, § 2). Moreover, the statute there in question (Municipal Home Rule Law, § 33, subd 2) did not incorporate verbatim the language of the constitutional provision relied on by the *Resnick* court. Therefore, *Nydick* must stand for the proposition that *any* other proper provision of law, whether local law or charter provision, which determines the mode of filling county legislative vacancies, bars gubernatorial appointment to such vacancies under section 43 of the Public Officers Law.

Paragraph Thirteenth of the respondent-intervenor's petition states that "Pursuant to the provisions of Municipal Home Rule Law, § 23 (2) (f),[2] section 2 of the Local Law No. 2 of the County of Oswego was subject to a mandatory referendum. Since no referendum has ever been held, section 2 of

---

2. *Section 23 (subd 2, par f) of the Municipal Home Rule Law provides in part that:* "Except as otherwise provided by or under authority of a state statute, a local law shall be subject to mandatory referendum if it * * * [a]bolishes, transfers or curtails any power of an elective officer".

Local Law No. 2 of the County of Oswego is invalid". Inasmuch as respondents agree that the Mayor never had the power of appointment of county officials, Local Law No. 2 did not "abolish(es), transfer(s) or curtail(s) any power of an elective officer" and was therefore not subject to a mandatory referendum. Nor can it be argued that Local Law No. 2 abolishes, transfers or curtails the power of the Governor since his appointive power pursuant to section 43 of the Public Officers Law is expressly conditioned upon the absence of any provision of law covering such appointments and hence contemplates local provision for appointments. The Legislature of an unchartered county has the power to provide for the filling of county legislative vacancies under section 10 of the Municipal Home Rule Law pursuant to the "mode of selection" clause set forth therein.

Respondent McCarthy cites section 24 of the Municipal Home Rule Law as controlling and requiring a referendum on the subject local law, although the specific subdivision on point is not cited and the issue of when a referendum on petition pursuant to section 24 is required is not discussed. The only possible applicable provision would be section 24 (subd 2, par j) which provides in pertinent part that: "Except as otherwise provided by or under authority of a state statute, a local law shall be subject to referendum *on petition* if it * * * is a local law relating to apportionment adopted pursuant to subparagraph thirteen of paragraph a of subdivision one of section ten of this chapter" (emphasis supplied). Local Law No. 2 recites that it is "[a] local law amending the local law number one—nineteen hundred seventy-one which provided for the apportionment of the legislative body of the county of Oswego." Section 5 of Local Law No. 1 provided in part that "[t]his local law shall take effect in conformity with the provisions of section twenty-four of the Municipal Home Rule Law". But even so, Local Law No. 2 would require a referendum only "on petition". The second paragraph of the law recites that it "[b]ecame a law October 18, 1971 with the approval of the chairman, *no petition protesting*" (emphasis supplied). Thus, no referendum was required under sections 23 and 24 of the Municipal Home Rule Law and the Oswego County Legislature properly filled the vacancy within the scope of its power under section 10 of the Municipal Home Rule Law.

Respondents further urge that Oswego County Local Law.

No. 2 of 1971 is void as embracing more than one subject in violation of subdivision 3 of section 20 of the Municipal Home Rule Law which provides that: "Every local law shall embrace only one subject. The title shall briefly refer to the subject matter."

Petitioner-respondent Rebeor asserts that since the title of both Local Law No. 1 of 1971, which Local Law No. 2 purports to amend, and Local Law No. 2 itself refer to "Apportionment of the Legislative Body" and not to a provision on the filling of vacancies, a separate local law would have been required to alter the manner of filling vacancies.

In construing similar language in our State Constitution (NY Const, art III, § 15), from which subdivision 3 of section 20 of the Municipal Home Rule Law was derived, the Court of Apppeals said:

"The purpose of this provision was to prevent concealment and surprise to the members of the Legislature and to the public at large, and to prevent legislative 'logrolling' * * *

"In applying the constitutional provision, the courts have formulated various tests, chief among which has been a limitation of the subject-matter to one subject, which, however, may embrace the carrying out of that subject-matter in various objective ways, provided the objectives are naturally connected with the subject-matter and the title could be said to apprise the reader of what may reasonably be expected to be found in the statute." *(Burke v Kern,* 287 NY 203, 213.)

The title of Local Law No. 1 of 1971 reads, "A Local Law to provide for the apportionment of the legislative body of the County of Oswego". The title of Local Law No. 2 of 1971 reads, "A local law amending the local law number one—nineteen hundred seventy-one which provided for the apportionment of the legislative body of the county of Oswego". The title of Local Law No. 1 expresses the subject matter of apportionment which necessarily includes the composition and membership of the county legislature. It cannot be said that the matter of appointment of vacancies in the apportioned county legislature lacks a necessary or natural connection to the composition and membership of the county legislature. Respondent's argument assumes that the question of legislative membership and representation in cases of midterm vacancies, e.g., resignations, is a subject separate from the question of legislative membership and represenatation at the general election. However, the filling of such vacancies is a necessary

corollary to the objective of proper and adequate representation to which the subject matter of apportionment is inextricably bound, and, therefore, the one-subject limitation of subdivision 3 of section 20 of the Municipal Home Rule Law is not transgressed by the local law here in issue. (See *Burke v Kern, supra; Richfield Oil Corp. v City of Syracuse,* 287 NY 234, 241; *Matter of Mitrione v City of Glens Falls,* 14 AD2d 716.)

The Oswego Legislature properly appointed appellant Dyer to fill the existing vacancy and the appointment of respondent Rebeor by the Governor is invalid. The judgment should be reversed and the petitions dismissed.

MARSH, P. J., MOULE, DILLON, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously reversed, on the law, without costs and petitions dismissed.