■ In the Matter of HIGHVIEW ESTATES OF ORANGE COUNTY, INC., Respondent, v TOWN BOARD OF TOWN OF MONTGOMERY, ORANGE COUNTY, NEW YORK, et al., Appellants. (Proceeding No. 1.) In the Matter of HIGHVIEW ESTATES OF ORANGE COUNTY, INC., Respondent, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants. (Proceeding No. 2.)
[955 NYS2d 175]—

Taylor Holdings Group, Inc. (hereinafter Taylor), owns a parcel of real property in the Town of Montgomery, consisting of approximately 95 acres, on which it operated a construction and demolition debris (hereinafter C&D) processing and recycling facility. Most of the property was included in an Interchange Development (hereinafter ID) District, while 13.3 acres were zoned for residential/agricultural uses. The petitioner owns undeveloped residentially zoned property adjacent to the site.

On May 1, 2008, Taylor submitted a petition to the Town Board of the Town of Montgomery (hereinafter the Town Board) seeking amendments to the Town Zoning Law to permit it to expand its facilities to develop a biomass gasification-to-energy facility, contending that this new technology would produce renewable, "green" energy from C&D debris, commercial waste, and municipal solid waste. Taylor further sought to have the acres that were zoned for residential/ agricultural uses rezoned to bring the entire project area within the ID zone.

The Town Board, as lead agency, issued a positive declaration under the State Environmental Quality Review Act (ECL art 8;

hereinafter SEQRA). On June 17, 2010, the Town Board accepted a draft environmental impact statement in connection with the proposed action. On November 10, 2010, the Town Board accepted a final environmental impact statement (hereinafter FEIS). The FEIS identified the proposed action as, among other things, the construction of the facility, changes to the Town Zoning Law to regulate and permit the operation of such facilities, and rezoning of 13.3 acres to an ID zone. A proposed local law was attached as an appendix. The local law, which ultimately was enacted as Local Law No. 5 (2010) of the Town of Montgomery (hereinafter Local Law No. 5), created a new "floating" Biomass Gasification-to-Energy District (hereinafter BGTE District), articulated a procedure and standards for the creation of such districts, amended the Town Zoning Map to rezone 13.3 acres of Taylor's site to an ID district, and designated the entirety of Taylor's site as a BGTE District.

On November 22, 2010, the Town Board adopted a SEQRA findings statement, concluding that, consistent with social, economic, and other essential considerations, from among the reasonable alternatives available, the proposed project and zoning amendments avoided or minimized adverse environmental impacts to the maximum extent practicable by incorporating, as conditions, those mitigative measures that were identified as practicable in the FEIS (see 6 NYCRR 617.11 [d] [5]). The Town Board thereupon enacted Local Law No. 5, which was entitled "A Local Law Amending the Zoning Law of the Town of Montgomery, Orange County, New York to Create a Biomass Gasification-to-Energy District Floating Zone and to Enact Regulations Pertaining Thereto." On December 2, 2010, the Town Board issued a special use permit and site-plan approval for the first phase of construction of the project. On December 3, 2010, the New York State Department of Environmental Conservation (hereinafter the DEC) issued its own SEQRA findings statement as an involved agency, and issued a solid waste facility permit pursuant to 6 NYCRR part 360 (hereinafter the Part 360 permit).

The petitioner commenced the instant two proceedings pursuant to CPLR article 78 to review the determinations. In proceeding No. 1, the petitioner sought a judgment annulling Local Law No. 5, the Town Board's SEQRA findings statement, the special use permit, and phase-one site-plan approval, arguing, inter alia, that the Town Board failed to comply with SEQRA and the Municipal Home Rule Law, and that the determinations were, thus, arbitrary and capricious and affected by an error of law. In proceeding No. 2, the petitioner

sought a judgment annulling the DEC's issuance of the Part 360 permit as arbitrary and capricious and contrary to applicable regulations. The Supreme Court granted the petitions and annulled the determinations. Taylor, the Town Board, and the DEC all separately appeal. In a decision and order on motion dated November 2, 2011, this Court stayed enforcement of the judgment pending hearing and determination of the appeal.

The Supreme Court properly determined that the petitioner had standing to commence proceeding No. 1 (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-774 [1991]; Matter of Duke & Benedict v Town of Southeast, 253 AD2d 877, 878 [1998]). However, the Supreme Court erred in granting the petitions and annulling the determinations based on purported violations of SEQRA and the Municipal Home Rule Law. Accordingly, we reverse the judgment, confirm the determinations, deny the petitions, and dismiss the proceedings on the merits.

Judicial review of an agency determination under SEQRA is limited to whether the agency procedures were lawful and "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986], quoting Aldrich v Pattison, 107 AD2d 258, 265 [1985]; see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007]). A rule of reason applies to the agency's decisions about which matters require investigation (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 308 [2009]). The agency decision should be annulled only if it is arbitrary and capricious, or unsupported by the evidence (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 416; Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d at 232).

Here, contrary to the petitioner's contention, the Town Board's SEQRA review of the project included a sufficient review of Local Law No. 5, including a review of the creation of a floating BGTE District and the rezoning of the 13.3 acres of Taylor's site that had initially been zoned for residential/ agricultural uses. The Town Board identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination that, consistent with all relevant social, economic, and other essential considerations, it had mitigated adverse impacts to the maximum extent practicable. Given the floating nature of the BGTE

District, and the fact that standards and procedures for the creation of new BGTE Districts were adopted, including the necessity for adoption of another local law to create any further BGTE Districts, the Town Board was not required to evaluate, on a conceptual basis, potential impacts from any other facility that might later be constructed in a hypothetical BGTE District that might later be established (*see Niagara Recycling v Town Bd. of Town of Niagara*, 83 AD2d 335, 340 [1981], *affd* 56 NY2d 859 [1982]; *cf. Matter of New York Canal Improvement Assn. v Town of Kingsbury*, 240 AD2d 930, 931 [1997]).

Moreover, the Supreme Court improperly determined that the title of Local Law No. 5 renders that local law in violation Municipal Home Rule Law § 20 (3), which requires that a local law embrace only one subject, and that the title "shall briefly refer to the subject matter." The components of Local Law No. 5 were naturally connected, and the title apprised the reader of what may reasonably be expected to be found in the statute (*see Burke v Kern*, 287 NY 203, 214 [1941]; *Sweet v City of Syracuse*, 129 NY 316, 331-332 [1891]; *Rebeor v Wilcox*, 58 AD2d 186, 192 [1977], *affd sub nom. Matter of Resnick v County of Ulster*, 44 NY2d 279 [1978]). A digest of the bill is not required (*see Matter of Clinton Ave.*, 57 App Div 166, 171 [1901], *affd* 167 NY 624 [1901]).

In addition, the Supreme Court erred in annulling the Town Board's SEQRA findings statement on the ground that final design details for subsequent phases of site-plan approval were not reviewed in the FEIS or addressed in the findings statement. The Town Board reviewed the entire project under SEQRA. The fact that certain design details necessary for subsequent phases of site-plan review were not finalized does not undermine the SEQRA review or result in improper segmentation (*see Matter of Save Open Space v Planning Bd. of the Town of Newburgh*, 74 AD3d 1350, 1352 [2010]). The FEIS established an "envelope" within which the project was assessed, with the detailed design phase to reflect the "envelope" assessment (*see Matter of Coalition Against Lincoln W., Inc. v Weinshall*, 21 AD3d 215, 223 [2005], *affd* 5 NY3d 715 [2005]). The FEIS was clear that any environmentally significant modifications to the project would result in the need for a supplemental environmental impact statement (*see* 6 NYCRR 617.9 [a] [7] [i]; *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 429; *Matter of Village of Pelham v City of Mount Vernon Indus. Dev. Agency*, 302 AD2d 399, 400 [2003]).

Upon its invalidation of Local Law No. 5 and the Town Board's SEQRA findings statement, the Supreme Court also an-

nulled site-plan approval for phase-one construction of the project, the special use permit and, in proceeding No. 2, the challenged Part 360 permit. Since the FEIS did not violate SEQRA, and the Town Board's adoption of its SEQRA findings statements was not arbitrary and capricious, those permits and approvals should not have been annulled on SEQRA grounds. Moreover, the petitioner failed to raise any alternative grounds for the annulment of those determinations (*see generally Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 545 [1983]). Accordingly, the petitions in both proceedings should have been denied and the proceedings dismissed on the merits (*see Moran Enters., Inc. v Hurst*, 96 AD3d 914 [2012]). Rivera, J.P., Balkin, Leventhal and Chambers, JJ., concur.